UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PETER SCHARFF,

        Plaintiff,

        v.

EDWARD VAISBORT and VAISBORT & ASSOCIATES, P.C.,

        Defendants.

Case No. 3:14-cv-00601-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

This is the fourth lawsuit brought by different plaintiffs arising from failed real estate development transactions. Each of the prior lawsuits alleged malpractice and securities law claims against Edward Vaisbort ("Vaisbort"), a California attorney, and his lender/investor client, Peter Scharff ("Scharff"). After winning one lawsuit and settling two other lawsuits, Scharff has now filed this case against his former co-defendant, Vaisbort, and his employer, Vaisbort & Associates, P.C., as being vicariously liable for Vaisbort's actions. In the Amended Complaint (docket #41), Scharff alleges claims for securities violations under ORS Chapter 59 (First Claim), breach of fiduciary duty (Second Claim), and negligence (Third Claim).

This case was initially filed in state court and timely removed to this court based on diversity jurisdiction under 28 USC § 1332(a) after the dismissal of the sole non-diverse defendant, Bennett Goldstein. Notice of Removal (docket #1), ¶¶ 7, 9.

Defendants have now filed a Motion for Summary Judgment (docket #47) against all of Scharff's claims. Although this court held a hearing on that motion on October 27, 2015 (docket #61), its ruling was delayed at the parties' request while they attempted to negotiate a resolution (docket #63). For the reasons set forth below, the motion should be denied.

## **LEGAL STANDARDS**

Summary judgment may be granted if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e).

The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989), quoting *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 249-50, 252 (1986). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn

from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

## BACKGROUND

### I. 2004 and 2005 Loans

The late Chris Thompson ("Thompson") was a loan broker, first based in California and later in Oregon, who operated through his business entities, Southern Oregon Investment Group and Southern Oregon Financial Group. Thompson often brokered loans for real estate development and property management projects with a California-based company named Dorn Platz Properties, Inc. ("Dorn Platz"). Beginning in the late 1990s, Vaisbort worked with Thompson in the pooling of investments on Dorn Platz's various projects.

In 2004, a small group of wealthy investors, including Scharff, made a loan[1] ("2004 Loan")[2] to Dorn Platz for the development of a mixed-use real estate development in Beaverton, Oregon, called "The Round." Dorn Platz, and its affiliates, had partnered in the development with Lehman Brothers, the New York investment bank, after construction had begun. To acquire additional funds for uses related to the development, Dorn Platz borrowed from a group of lenders, many of whom had previously lent money to it for other projects and other purposes.

Scharff was the lead lender for The Round, lending approximately two-thirds of the total loan amount. Scharff had a long history of extending private loans to individuals and others, including Dorn Platz at the instigation of Thompson. Scharff enjoyed considerable success with

---

[1] The First Claim alleges that the "loans" at issue in this case were, in fact, the "solicitation and sale" of "fractionalized interests" in a note which constituted the sale of unregistered securities under ORS Chapter 59. This court expresses no view regarding the nature of the relevant financial transactions and refers to them as "loans" made by "lenders" simply for ease of reference.

[2] The 2004 Loan is sometimes referred to by the parties as the "2004 Rollover Loan."

3 – FINDINGS AND RECOMMENDATION

his loans to Dorn Platz, which performed well for many years. The 2004 Loan similarly performed as anticipated.

In 2005, Dorn Platz asked that the 2004 Loan be "recast" or refinanced. As part of that refinance, Dorn Platz changed the collateral, increased the loan amount, and paid off some lenders from the 2004 Loan who elected to be repaid their principal and chose not to make another similar loan to Dorn Platz. Scharff, on the other hand, chose to make another and further loan to Dorn Platz and to remain as lead lender. The 2005 Loan,[3] like the other loans to Dorn Platz, performed well until the collapse of the mortgage market and then the financial market.

The 2004 and 2005 Loans were structured as a purchase of a fractionalized interest in a promissory note with a pooled group of other investors. The pooled investment was to be collateralized by an assignment of trust deeds and carried with it numerous personal guarantees. Scharff and his wife (later ex-wife) purchased a $191/283^{rd}$ share of the Note and eventually brought their total investment in the Note to $3,415,000.00.

Sometime in 2008, Dorn Platz defaulted on the note. Scharff met with the principals of Dorn Platz and learned that there was no collateral or substitute collateral and that the note and guarantees given as collateral were worthless. Scharff and the other lenders lost all their investments in Dorn Platz.

## II. Prior Lawsuits and Current Claims

In the ensuing years, some disappointed lenders sued Scharff and Vaisbort who had prepared some of the loan documents for the 2004 and 2005 Loans. The first was brought by Elizabeth Lahn and Alexis Scharff in May 2010 ("*Lahn* lawsuit"). The second was filed in

---

[3] The 2005 Loan is sometimes referred to by the parties as the "2005 Acquisition Loan."

September 2011, by a lender who had purchased an interest in the 2005 Loan, months after it was originally made ("*Anderson Trust* lawsuit"). The third lawsuit was filed in June 2012 by another original lender ("*Rathjen* lawsuit"). Each of the three lawsuits named both Vaisbort and Scharff as defendants and alleged a variety of claims related to the failed 2004 and 2005 Loans, including claims for violations of securities laws.

The procedural background of the *Lahn* lawsuit is set forth in detail in Scharff's Response in Opposition to Defendants' Motion for Summary Judgment (docket #54), pp. 34-37, and is incorporated herein by reference. On February 13, 2012, plaintiffs in the *Lahn* lawsuit filed a Third Amended Complaint (Second Supp. Kiolbasa Decl. (docket #62), ¶¶ 2-4 & Ex. 26), after which Vaisbort filed a motion for summary judgment (Kiolbasa Decl. (docket #48), Ex. 17). Scharff filed his own motion for summary judgment stating, among other things, in a single sentence that he "hereby joins Vaisbort's motion for summary judgment on plaintiffs' Fourth Claim." *Id*, Ex. 18, p. 1. The Fourth Claim in the *Lahn* lawsuit alleged two counts of securities violations under Oregon law, ORS Chapter 59.

On March 21, 2013, the trial court in the *Lahn* lawsuit issued an email ruling on a host of motions, including the motions by Vaisbort and Scharff. *Id*, Ex. 19. In particular, the trial court granted summary judgment against both counts of the Fourth Claim to Vaisbort and Scharff who had joined in Vaisbort's motion. Although "the trial court did not articulate the basis on which it granted summary judgment on the securities law claim," the primary argument raised in Vaisbort's motion with respect to the Fourth Claim was that the "2005 loan transaction did not involve a security," an issue addressed by the Oregon Court of Appeals in its recent opinion reversing the grant of summary judgment on the Fourth Claim, *Lahn v. Vaisbort*, 276 Or App 468, 489 (Feb. 18, 2016). Tolliver Supp. Decl. (docket #65), Ex. 1.

# FINDINGS

Defendants seek summary judgment against the First Claim alleging securities violations as to the 2004 and 2005 Loans based on judicial estoppel and the lack of evidence that the loans were securities under the Oregon securities laws. They also seek summary judgment on the breach of fiduciary duty and negligence claims based on lack of evidence to prove causation. The motion should be denied on the First Claim based on the Oregon Court of Appeals' recent decision and on the Second and Third Claims based on disputed issues of material fact.

## I. Securities Claim (First Claim)

The trial court in the *Lahn* lawsuit granted summary judgment against the two counts of securities law violations based on the 2005 Loan. That ruling was on appeal at the time of the hearing on the pending motion in this case. The recent decision by the Oregon Court of Appeals sounds the death knell to Vaisbort's arguments for summary judgment on the First Claim.

Defendants argue that Scharff's one-line joinder in Vaisbort's summary judgment motion regarding the securities claims (two counts of the Fourth Claim in the *Lahn* lawsuit) was sufficient to require the application of judicial estoppel doctrine to bar Scharff's securities claim in this case. However, to the degree that Vaisbort and Scharff (who joined in Vaisbort's argument) argued that the 2005 Loan was not a security, they have lost that argument. On February 18, 2016, the Oregon Court of Appeals "viewing the evidence in the light most favorable to plaintiff, [concluded] that defendant was not entitled to judgment as a matter of law on the ground that the 2005 loan transaction did not involve a security." *Lahn*, 276 Or App at 489, citing *Reeves v. Ernst & Young*, 494 US 56 (1990). Accordingly, this court concludes that judicial estoppel may not be applied to bar the First Claim premised on the 2005 Loan. *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F3d 1234, 1239 (9th Cir

1998), citing *Masayesva v. Hale*, 118 F3d 1371, 1382 (9th Cir 1997) ("A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent statement, and we have recently adopted that rule.").

Defendants also argue that judicial estoppel bars any attempt by Scharff to "blur" the lines between the 2004 Loan and the 2005 Loan. Accordingly, they contend that Scharff is estopped from attempting to prosecute his claims for damages from the 2004 Loan. It may well be that the 2004 Loan and the 2005 Loan must be considered independently. However, judicial estoppel is not the appropriate vehicle for making that argument.

The *Lahn* plaintiffs based their prayer for damages on the amounts and terms of the 2005 Loan. Second Supp. Kiolbasa Decl., Ex. 26, ¶ 73.B. When moving for summary judgment, both Scharff and Vaisbort pointed that distinction out to the trial court. Kiolbasa Decl., Ex. 17 (Vaisbort's Motion for Summary Judgment in *Lahn* lawsuit), p. 7 ("Plaintiffs allege damages comprising the loan principal amounts of $500,000 and $400,000, plus their expected interest at the default rate of thirty-five percent.") & Ex. 18 (Scharff's Motion for Summary Judgment in *Lahn* lawsuit), p. 3 ("The loan that forms the basis of this suit occurred in 2005"). And that is expressly how the Oregon Court of Appeals understood the *Lahn* pleadings:

> We understand plaintiff's theory of defendant's liability to be that defendant materially aided in the sale or solicitation of the sale of the promissory note for the 2005 rollover/recast loan "by fraud or deceit" because plaintiff was unaware that the loan was unsecured by real property when she signed the Inter Creditor Agreement.

*Lahn*, 276 Or App at 482.

Given that the pleadings were interpreted to allege a claim based only on the 2005 Loan, it is not surprising that neither the trial nor appellate court rulings indicate one way or the other that the 2004 Loan could or could not provide a basis for a claim. The judicial estoppel doctrine

provides no basis on which to estop Scharff from pleading his own case as he sees fit. Thus, this court leaves that issue to another day.

As for the merits of the argument about the loan transaction(s) not constituting "securities" under Oregon securities laws, this court is required to "follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Sharkey v. O'Neal*, 778 F3d 767, 773 (9th Cir 2015), citing *Ryman v. Sears, Roebuck & Co.*, 505 F3d 993, 994 (9th Cir 2007). Based on the ruling by the Oregon Court of Appeals on this issue in the *Lahn* lawsuit, this court also concludes that defendants are not entitled to summary judgment that the loan transaction(s) are outside the scope of Oregon securities laws.

## II.   Tort Claims (Second and Third Claims)

Defendants also seeks summary judgment against the Second and Third Claims alleging breach of fiduciary duties and negligence.

A claim for breach of fiduciary duties and a claim for legal negligence both require proof of three essential elements, namely tortious conduct, harm, and causation. *Kelly v. Lessner*, 224 Or App 31, 36, 197 P3d 52, 54 (2008), citing *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994). Moreover, both claims are "based on a failure to meet the applicable standard of conduct," but "[p]rofessional negligence implicates a duty of care, while a breach of fiduciary duty implicates a duty of loyalty and honesty." *Pereira v. Thompson*, 230 Or App 640, 653, 217 P3d 236, 246 (2009) (internal quotation marks and citation omitted). Thus, though they may be based on the same set of facts, "negligence claims and breach of fiduciary duty claims [are treated] separately." *Id*, 230 Or App at 655, 217 P3d at 247.

"In a legal negligence claim, the issue is whether the attorney violated the duty of care, which is 'to act as a reasonably competent attorney in protecting and defending the interests of the client.' To prove that breach, a jury often requires expert evidence setting forth the appropriate standard of care owed by a reasonable attorney and how the defendant failed to uphold that standard." *Id* (citations omitted). In contrast, "a plaintiff pursuing a claim for breach of fiduciary duty need not prove the breach element using expert evidence establishing a 'reasonable attorney' standard of loyalty, good faith or fair dealing. Rather, a plaintiff needs to show by a preponderance of the evidence that a defendant was disloyal." *Id.*

Defendants attack the causation element of each of these two claims. In particular, they claim that Scharff was a skilled investor who reviewed all the financial information himself and independently decided to invest and that Vaisbort simply prepared the necessary paperwork. Furthermore, defendants contend that any allegations about the loans not being collateralized by the "Principals Security" (also referred to as the "Chou Note") are non-starters because Scharff knew the Chou Note was removed as collateral for the 2004 Loan based on the supplemental escrow instructions and knew that the 2005 Loan expressly disclaimed the Chou Note as security. Finally, Vaisbort contends that any causal chain between his conduct and any losses by Scharff was broken due to the unforeseen financial crisis of the late-2000s.

The court is not persuaded that, on this record, defendants may evade Scharff's claims for legal negligence and breach of fiduciary duties simply by asserting that Vaisbort was a mere scrivener for a sophisticated client and by pointing to outside market influences which magnified Scharff's financial losses. Scharff alleges that Vaisbort failed to advise him to seek independent legal advice, represented parties with directly conflicting interests, failed to advise him against taking a host of actions under powers of attorney that later embroiled him in litigation, and had a

conflict of interest himself due to the fact that his payment was dependent upon the loans closing.

Scharff states that he was informed that the Chuo Note and a second trust deed in various properties would be assigned after closing and assumed that Vaisbort would follow through as he had done in the past. Scharff Decl. (docket E 55), ¶¶ 4-5. He did not know that the loan documents contained inaccurate information and material omissions, such as Vaisbort preparing loan transactions using the same guarantors and borrowers that significantly changed the borrowers' financial condition. *Id*, ¶ 5. Scharff had never dealt with loans that were not secured by real property and did not know that the 2005 Loan differed substantially from his prior loans to Dorn Platz. *Id*, ¶ 6. Had he been advised to seek independent legal advice or known about the various "side dealings" affecting the collateral securing the 2004 and 2005 Loans, Scharff never would have entered into those loans, would have avoided the market crash altogether with respect to those loans, would have taken action to recoup his investment while funds were still available, and would have avoided the ensuing and costly litigation. *Id*, ¶¶ 7-8.

Whether or not Scharff may rely on the lack of advice related to particular item(s) of collateral to bolster these claims, the record is replete with sufficient material factual disputes as to Vaisbort's conduct to make summary judgment at this juncture inappropriate.

## **RECOMMENDATION**

For the reasons set forth above, Defendants' Motion for Summary Judgment (docket #47) should be DENIED.

///

///

///

## SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, March 14, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED February 25, 2016.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge